[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant, Philip P. Mlynarski, was a partner in the law firm of Eisenberg, Anderson Jackaway on October 1, 1981. The firm later became known as Eisenberg Anderson when Attorney Jackaway left to become a Superior Court Judge. This law suit arises from certain actions of Attorney Mlynarski during the period while he was a member of the partnership prior to its termination on April 9, 1987.
Allegations were made that Attorney Mlynarski had violated his duties as a fiduciary, trustee or attorney in his handing of the funds of four elderly women, Judith Borg, Hildur Peterson, Florence Pyne and Esther O'Meara. As a result of these allegations four suits were brought against the law firm of Eisenberg and Anderson to recover various amounts of money that were alleged to have been misappropriated, converted or misused by Attorney Mlynarski. As a result of these suits the law firm paid out substantial amounts of money and has brought this action against Mlynarski to recover those sums and other claimed damages.
Based on all the evidence before the Court, it was absolutely clear that all four cases had substantial merit. In each case, there was overwhelming evidence presented that the defendant had misused funds entrusted to him. The CT Page 10747 defendant's wrong doing, breach of trust and/or duty was crystal clear. The only testimony before the Court that was used to attempt to raise questions about the plaintiffs' case was offered by the defendant himself. His explanations and rationalizations were not at all convincing. At the time of the trial, the defendant was under psychiatric care and came across as a deeply troubled person and unable to admit, even to himself, what he had done. In short, his testimony was not the least bit credible.
The legal arguments offered by the defendant were so weak as to hardly require discussion. There is no merit to the claim that the release of the automatic stay imposed by the U.S. Bankruptcy Court was insufficient to allow this action to proceed. A relief of stay was granted by the Bankruptcy Court which allowed Eisenberg and Anderson to proceed with the present action. Under Connecticut law Eisenberg and Anderson can proceed to collect both subrogated and non-subrogated claims. The Insurance Company (American Home), which has a subrogated interest, has not been named, and is not required to be named, as a party, hence no release of stay as to American Home is required. In addition the defendant took no action in bankruptcy court to enforce this claim there.
Defendant claims that paragraph 11 of the partnership agreement specifically bars the suit in question. Paragraph 11 reads as follows:
 "Negligence: Except to the extent that the partnership is insured against liability, a partner guilty of negligence or wrongdoing shall reimburse the partnership for damages sustained as a result of such negligence or wrongdoing."
This paragraph is in the nature of a waiver, and as such should have been plead separately by the defendant. Having failed to do so, the defendant cannot now rely on that claim. Assuming, however, that the defendant could rely on paragraph 11 of the partnership agreement, that paragraph would not relieve him of liability under the facts of this case. For all the reasons set forth in plaintiffs', brief including the testimony of Stephen Anderson, the Court concludes that paragraph 11 is applicable to negligent acts and not deliberate intentional acts. In this case, the defendant's CT Page 10748 conduct included intentional criminal acts, breaches of trust and fiduciary duty as well as conversion of funds. Accordingly, paragraph 11 of the partnership agreement is not a bar to the plaintiffs' recovery of funds paid out to settle the claims brought by Borg; O'Meara and Peterson.
Even if the Court concluded that paragraph 11 applied to the intentional misconduct or wrongdoing perpetrated by the defendant, that paragraph would not bar the plaintiffs' recovery. This is so because paragraph 11 relieves the defendant of the duty to reimburse the partnership only to the extent that the loss is covered by insurance. However, as indicated in the plaintiffs' brief, the only coverage provided by the policy insuring the firm was excess coverage for the "innocent insured" i.e. the remaining partners.
This comes about because the malpractice policy covering the partnership (Exhibit O) contains exclusions making the policy inapplicable:
 (a) "To any claim arising out of criminal act, error or omission of any insured;"
 (b) To any claim arising out of any dishonest, fraudulent or malicious act, error or omission of any insured committed, with actual dishonest, fraudulent or malicious intent."
The Court is satisfied, based on all the evidence before it, that the Borg, O'Meara and Peterson claims resulted from the defendant's acts which resulted in excluding coverage for the defendant's liability under the law firm's malpractice policy. Paragraph V of the conditions portion of the policy entitled "Innocent Insured" does, however, provide coverage for the remaining partners of a law firm who are not guilty of the conduct referred to in the above mentioned exclusion. It is clear however, that the coverage provided to the innocent parties is essentially an excess provision. This provision comes into play only after the full extent of any assets of the wrong doer, who is excluded because of his criminal, dishonest or fraudulent actions, have been applied to the loss. Accordingly, the Court concludes, that when the insurance policy is properly interpreted, and read in conjunction with paragraph 11 of the partnership agreement, that policy provides excess coverage for the remaining CT Page 10749 partners as innocent insured but only after the defendant's (i.e. wrong doer) assets are exhausted. An attempt through this suit to obtain a judgment against the defendant and exhaust his assets, so as to bring into play the liability insurance to protect the remaining innocent insureds, does not present a basis for barring the claim under paragraph 11 of the partnership agreement. Clearly, there is liability insurance only after defendant's assets are exhausted and there is no basis in law or logic for holding that defendant's refusal to throw his assets voluntarily on the table means that he is relieved of the responsibility by paragraph 11 of the partnership agreement. Accordingly, the Court concludes that paragraph 11 cannot, and should not, be read to prevent a claim for indemnification against the defendant.
The foregoing conclusions are supported by the following findings of facts:
1. Eisenberg Anderson is a law partnership which continues to exist for purposes of winding down its affairs, as provided for by Section 34-68 of the Connecticut General Statutes.
2. The partnership, as it existed prior to April 9, 1987, was dissolved by Philip P. Mlynarski's withdrawal from the partnership and by the express will of the remaining partners who no longer wished to be associated with him as partners. See Section 34-67 of the Connecticut General Statutes.
3. The dissolution of the partnership was the direct result of the defendant's breach of his fiduciary duties to the partnership and his partners in failing to fully, fairly, and honestly account to them regarding his handling of client's funds and by his misuse and apparent conversion of client's funds and property for his own benefit. These actions exposed the plaintiffs to legal liability under Sections 34-51 and 34-52 of the Connecticut General Statutes.
4. As a direct result of the defendant's misuse of client's funds and property, in breach of his fiduciary duties to both his clients and his partners, four lawsuits were brought against the plaintiffs as outlined in the plaintiff's complaint. These lawsuits alleged liability on CT Page 10750 the part of the plaintiffs for the acts of the defendant in converting client's funds and/or property.
5. The plaintiffs have established in the matter of Florence Pyne, that a prima facie case of conversion existed as against the defendant Philip P. Mlynarski. This was established by the following facts:
 a. A fiduciary relationship existed between Florence Pyne and Philip P. Mlynarski based upon the attorney/client relationship;
 b. The defendant utilized funds of Florence Pyne for his own purposes. Specifically, in February, 1986 he withdrew over $42,000 from an account in her name at the Berlin Savings Bank by closing out that account utilizing a power of attorney and depositing it into the account of the Hildur Peterson Trust at the Burritt Bank. Further, he utilized the proceeds of the sale of Mrs. Pyne's home in April, 1986 for his benefit and the benefit of others;
 c. This use of client's funds was not authorized by the client.
6. The defendant failed to offer any credible evidence to rebut the presumption created by the fiduciary relationship that these transactions were the result of fraud or undue influence.
7. The payment of $5,000 in settlement of this claim was reasonable.
8. In the Judith Borg matter, a prima facie case of conversion and breach of fiduciary duty existed as against the defendant Philip P. Mlynarski. This was established by the following facts:
 a. A fiduciary relationship existed between Judith Borg and Philip P. Mlynarski and between Peter Hansen and Philip P. Mlynarski, based upon the attorney/client relationship; CT Page 10751
 b. The transfer of the Borg real estate by quit claim deed to the defendant Philip P. Mlynarski was without consideration;
 c. At the time that the quit claim deed of the Borg property was executed, Judith Borg was an elderly woman;
 d. The defendant Philip P. Mlynarski failed to make full disclosure of the transfer of the Borg property to himself, either to the administrator of the Borg estate, Peter Hansen, or to the Probate Court;
 e. A number of subordinate factors cast further doubt on the legitimacy of the transaction, thereby supporting the presumption of undue influence, including: the fact that the deed was not recorded on the land records until the day prior to the death of Judith Borg; the fact that the transfer of the property to Philip P. Mlynarski was not disclosed on the succession tax return prepared by Mlynarski, despite the fact that it should have been included therein, as a transfer made within three years of her death; the fact that the quit claim deed was executed in favor of "Philip P. Mlynarski, Trustee", but without any corresponding trust documents executed by Judith Borg; and the fact that the estate paid post death expenses relating to the property, including insurance and maintenance, thus supporting the claim of the executor that he believed that the real estate was estate property.
9. The defendant failed to offer any credible evidence to rebut the presumption that the transfer to him was the result of undue influence and/or fraud.
10. The Borg case was settled in 1991, after Attorney Mlynarski was convicted of a felony in June, 1990 which clearly impinged upon his credibility. Mlynarski's explanation of his agreement with Mrs. Borg was woefully weak, even without considering his felony conviction. CT Page 10752
11. The statute of limitations was not a viable defense to the Borg case.
12. The settlement of the Borg case, by the plaintiffs, for $60,000, was reasonable. First, there was no reasonable possibility that the suit could be successfully defended for the reasons outlined in paragraphs 8, 9, 10 and 11. Second, the exposure in the case was $80,000, plus statutory interest at 10% dating back to August, 1983, plus potential exposure for attorney's fees and treble damages.
13. In the Esther O'Meara matter, a judgment of conversion was entered against Mlynarski in the amount of $77,265.41, with an award of treble damages, resulting in a total judgment of $232,356.39.
14. The settlement of the O'Meara case by the plaintiffs, for $72,500, was reasonable in view of the vicarious liability provisions in the Uniform Partnership Statute and possibility that the law firm might have been liable for the full, trebled award.
15. In the matter of Hildur Peterson, a prima facie case of conversion and misappropriation existed as against Mlynarski. This conclusion is based on the following facts:
 a. A fiduciary relationship existed between Philip P. Mlynarski and the Peterson Trust, including its income beneficiary, Ethel Benaski, based upon the defendant's position as attorney for the Estate of Hildur Peterson and his appointment as trustee of the testamentary trust created by the Will of Hildur Peterson;
 b. The defendant utilized the funds of the Peterson Trust for his own purposes in violation of his fiduciary duty as trustee. Specifically, it is found that he used the funds, in part, to construct a home used by himself and his family in New Hampshire.
 c. A total of $177,706.56 from the Estate of Hildur Peterson was deposited in the account CT Page 10753 entitled "Philip P. Mlynarski, Trustee U/W Hildur Peterson," established at the Burritt Bank in March, 1984. Of this total, only $15,139.23 went to the benefit of the income beneficiary, Ethel Benaski. As of April, 1987, the account balance was $6,445. The total funds unaccounted for were $156,232.33.
 d. This use of the funds of the Estate of Hildur Peterson was not authorized by either the income beneficiary or the residual beneficiary of the trust. This conclusion is buttressed by the admission of Philip P. Mlynarski that he did not discuss his use of the trust funds with the income beneficiary Ethel Benaski. It is further supported by the fact that a lawsuit was brought against Mr. Mlynarski by David Carlson, the successor trustee, alleging conversion.
 e. Despite defendant's testimony that his use of the money constituted a legitimate loan or loans, the Court finds there were no such transactions merely an unauthorized use of the money by the defendant for his own benefit.
16. The defendant presented no credible evidence sufficient to overcome the presumption that his personal use of the trust funds was improper.
17. The ability to defend the Peterson action was undermined by the defendant's felony conviction in June, 1990 as the conviction would have been admissible had the Peterson case gone to trial.
18. The settlement of the Peterson case, by the plaintiffs, for $195,000, was reasonable. There was no reasonable possibility that the suit could have been successfully defended for the reasons outlined in paragraphs 15, 16 and 17. Second, the exposure in the case was substantially greater than $195,000, in view of the unaccounted funds of $156,232.33, plus statutory interest at 10% dating back to March, 1984, plus potential exposure for attorney's fees and treble damages. CT Page 10754
19. As to the claim for attorney's fees as damages for legal services performed by the law firms of Tarlow, Levy and Halloran Sage, as well as by the New Hampshire law firms of Sheehan Phinney and Nighswander, Martin Mitchell, the Court finds the following facts:
 Tarlow, Levy was retained at the initial stages to protect the interests of the Eisenberg 
Anderson law firm in general with respect to the problems created by the actions of Philip Mlynarski and, specifically, to defend the claims relating to Florence Pyne. In addition, they coordinated the legal proceedings commenced in New Hampshire which were designed to obtain an attachment on the defendant's property in New Hampshire. The New Hampshire firms were retained to commence an action and obtain an attachment in New Hampshire in order to protect the rights of the partnership. The firm of Halloran Sage succeeded Tarlow, Levy in prosecuting the current action. The evidence shows that the bills of the four law firms were paid and there is a presumption that the charges were reasonable. The defendant has provided no credible evidence to the contrary.
20. The attorney's fees expended in defending Eisenberg and Anderson in the prior actions and in prosecuting this action are recoverable elements of damage. The latter are recoverable because the defendant intentionally disregarded his fiduciary duties to his partners having misused client's funds and property. Thus, the plaintiffs are entitled to attorney's fees as exemplary damages.
21. The accounting firm of Blum, Shapiro was retained by the plaintiffs in an effort to determine the nature and extent of the defendant's misuse of client's funds and, in particular, to reconcile the client's funds trustee accounts. The bills of Blum, Shapiro were paid and are therefore presumed reasonable. The defendant has failed to produce credible evidence to rebut the presumption of reasonableness.
22. As a result of the claims brought against the Eisenberg and Anderson law firm, the law firm incurred an insurance deductible expense of $2,500. CT Page 10755
23. As a result of the settlement of the claims brought against Eisenberg and Anderson, caused by defendants actions, the successor firm of Eisenberg, Anderson, Michalik Lynch incurred substantial insurance premium surcharges. While such charges would be recoverable, the Court was not satisfied with the basis offered for the claim and declines to base an award on the proof offered.
24. The settlement payments referred to above ($5,000, $60,000, $72,500 and $195,000) are damages suffered by the law firm as a result of the defendant's breaches of fiduciary duty and are recoverable as damages under the First, Second, Third, and Fourth Counts, respectively.
25. The damages outlined in paragraphs 17, 18, 19, and 20 are additional damages suffered by the law firm as a result of the defendant's breaches of fiduciary duty and are recoverable as damages under the Fifth and Six Counts of the Complaint.
Based on the Court's findings and legal conclusions as previously set forth, the Court awards damages as follows:
The First Count — Judgment for the plaintiffs in the amount of $5000 plus interest to December 1, 1992 of $2,793.43 for a total of $7793.43.
The Second Count — Judgment for the plaintiffs in the amount of $72,500 plus interest to December 1, 1992 of $26,612.40 for a total of $99,112.40.
The Third Count — Judgment for the plaintiffs in the amount of $195,000 plus interest to December 1, 1992 of $33,921.70 for a total of $222,404.46.
The Fourth Count — Judgment for the plaintiffs in the amount of $60,000 plus interest to December 1, 1992 of $10,390.08 for a total of $70,390.08.
As to the Fifth and Sixth Counts the Attorneys' fees, Accountants' fees and deductibles are recoverable under either count.
Judgment for the plaintiffs in the amount of $61,073.58 plus interest of $11,726.70 for a total of $72,800.28. CT Page 10756
As a result of the Judgments on each individual Count, the Court finds for the plaintiffs to recover from the defendant the sum of $389,073.58 plus interest of $85,444.31 to December 1, 1992. Therefore, the Court enters Judgment for the plaintiffs in the amount of $474,517.89.
As to the counterclaim, Attorney Mlynarski failed to establish by credible evidence sufficient facts to establish any cause of action. Therefore, the Court enters Judgment for Eisenberg and Anderson and the parties individually.
As to the plaintiffs' request for declaratory relief, the Court finds and holds pursuant to Sections 34-70 (1)(c) and (d) of the Connecticut General Statutes that the partnership of the parties, as it existed prior to April 9, 1987, was dissolved as a result of the gross misconduct of Attorney Philip R. Mlynarski. This misconduct was in breach of the partnership relationship and made it impossible and impractical for the other partners to continue the partnership business with Attorney Mlynarski.
BY THE COURT, HON. WILLIAM M. SHAUGHNESSY SUPERIOR COURT, JUDGE